IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LUIS B. LOPEZ | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv148 |
| EAST TEXAS TREATMENT FACILITY, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff filed a *pro se* complaint under 28 U.S.C. § 1983 complaining that Defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs in prison. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is a motion by Defendants Cain and Helt for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Dkt. #25.) Plaintiff has not responded to the motion, which is now ripe for review. For the reasons explained below, the undersigned recommends that the motion be denied.

**I. Plaintiff's Claims**

Plaintiff's original complaint was dated April 5, 2022 (Dkt. #1 at 5), but his operative pleading is his second amended complaint dated May 24, 2022. (Dkt. #11.) In it, he sues practice manager Brent Cain, "provider" Ms. Helt, and a nurse identified as "Mrs. Lowis."[1] (*Id.* at 3.) He alleges that he informed medical staff at the East Texas Treatment Facility that he was suffering

---

[1] Defendants Cain and Helt were served through and are represented by the Texas Office of the Attorney General. (Dkt. ##12, 17.) Counsel for Defendants has advised the Court that he took steps to locate Defendant Lowis but that no such person could be identified. (Dkt. #25 at 1.) Plaintiff has made no effort to better identify or serve Defendant Lowis.

from high blood pressure, aches, pains, and blackouts, but he was repeatedly denied unspecified treatment and his prescribed blood pressure medication. (*Id.* at 4.) The Court understands Plaintiff to allege a general and long-standing failure to manage his blood pressure. He also alleges that Defendant Helt attributed his inability to move his arm after he fell off his bunk in November 2021 to old age. (*Id.*) Plaintiff says that two days after the fall, he went to an outside hospital, where it was documented that he had had a stroke. (*Id.*)

Plaintiff identifies five days in March 2022 and one day in May 2022 on which the "pill window" did not open to distribute his medication. (*Id.* at 6.) He alleges that he spoke to Defendant Cain on March 29, 2022, about not getting his medication or blood pressure checks daily, but that "no action was ever taken on this deliberate indifference." (*Id.*)

Plaintiff says he also spoke with Defendant Helt about an increase in blood pressure that he believed was caused by a change in his psychiatric medication. (*Id.*) Plaintiff alleges that the psychiatrist changed his medications on April 26, 2022, but that Ms. Helt told him that she did not care what the doctor said. Plaintiff states that he was having severe headaches and passing out at that time. (*Id.*)

Finally, Plaintiff alleges that he tried to talk to Ms. Lowis (or Lewis) once in February 2022 and again in May 2022 about "how [he] felt or what was bothering [him]," but "she would go crazy cussing [him]" and not let him speak. (*Id.*)

Plaintiff seeks unspecified compensatory and punitive damages and an injunction to require treatment of medical issues. (*Id.* at 4.)

**II. Defendants' Motion and Supporting Evidence**

Defendants move for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies for his claim prior to filing suit. (Dkt. #25.) Specifically, they assert that

2

the Texas Department of Criminal Justice (TDCJ) has a two-step grievance system through which prisoners can raise any issue about prison conditions, including a Step 1 grievance and a Step 2 appeal. (Dkt. #25 at 2, 5.) They have submitted a certified copy of the relevant portion of the Officer Orientation Handbook, which describes these grievance procedures. (Dkt. #25-2 at 11–13.)

Defendants have also submitted certified copies of Plaintiff's grievance records from October 1, 2021, to July 14, 2022, and identify two relevant grievances. (Dkt. #25 at 2–3; Dkt. #25-1.) First, they point to a Step 1 grievance Plaintiff submitted on April 18, 2022, about his March 29, 2022 conversation with Defendant Cain. (Dkt. #25 at 2; Dkt. #25-1 at 15–16.) They state that this grievance, #2022087863,[2] was not processed because Plaintiff "failed to adhere to the grievance process requirements." (Dkt. #25 at 6.) Defendants further assert that any claim related to that grievance is not exhausted, because he did not file a Step 2 appeal. (Dkt. #25 at 2–3.)

Second, Defendants say Plaintiff submitted a Step 1 grievance on July 11, 2022, about an alleged interaction with Defendant Helt. (Dkt. #25 at 3.) That grievance, #202212893, was also not processed due to "failing to comply with the grievance process requirements," and Plaintiff did not file a Step 2 appeal "as required." (*Id.* 3, 6.) Defendants further observe that this grievance was filed after Plaintiff filed either complaint in this case. (*Id.* at 6.)

Because, in their view, neither of the grievances they discuss constituted exhaustion, and Plaintiff did not file a grievance about his arm injury, Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

---

[2] Due to an apparent typographical error, Defendants refer to this grievance by number 202208763. (Dkt. #25 at 6.)

The Court's review of the attached grievance records identifies additional relevant information. Plaintiff submitted Step 1 grievance #2022047956 on January 1, 2022, and it was stamped received in the grievance office on January 4, 2022. (Dkt. #25-1 at 75–76.) He referenced multiple medical I-60 requests and complained that he was having headaches and blackouts and had fallen down twice but had been denied treatment. He said he was not being permitted to attend his medical appointments because of scheduling conflicts with court and officers' refusal to let him go after court. (*Id.* at 75.) He sought immediate medical services. (*Id.* at 76.) Included among the records of that grievance are two inmate I-60 requests submitted by Plaintiff. (Dkt. #25-1 at 77–78.) In the first, dated November 12, 2021, Plaintiff complained of a constant bad headache for days, burning in his stomach, and low energy related to blood pressure. (*Id.* at 77.) He said he was still waiting for medication and had asked medical for help "a few times" but had not been helped. (*Id.*) The disposition note said "nurse sick call" without further detail. (*Id.*) In the second request, on December 20, 2021, Plaintiff complained that he had not been allowed to visit the clinic for a scheduled appointment because he was prevented from going during count, and then he was told he was too late. (*Id.*) Plaintiff said he had had two blackouts and fallen down twice and needed to see someone immediately. (*Id.*) The disposition again was "nurse sick call." (*Id.*)

The response to this grievance, which was returned to Plaintiff on February 7, 2022, said that he had refused to go to medical at the proper time and had attempted to go during count, when no movement is allowed. (Dkt. #25-1 at 76.) Plaintiff appealed that response in a Step 2 grievance that was received by prison officials on February 14, 2022. (*Id.* at 73.) He complained that he was still having blackouts and pain from high blood pressure and "aggravations" from an arm injury he sustained in a fall. (*Id.*) He said that the only response to his complaints had been to prohibit him from keeping his medication with him ("kop") and force him to walk a long distance to the

4

pill window to obtain his medicine. (*Id.*) The response to Plaintiff's Step 2, dated February 22, 2022, observed that Plaintiff's complaints of headaches, blackouts, and arm pain had been documented. (*Id.* at 74.) It stated that "Medical has provided services for your headaches, however, no I-60's have been received regarding blackouts, arm pains, or you falling during a headache." (*Id.*) It also stated that Plaintiff's kop privileges had been denied due to failure to take his medication as prescribed. (*Id.*) It concluded that no further action was warranted. (*Id.*)

On January 4, 2022, Plaintiff submitted Step 1 grievance #2022048641. (Dkt. #25-1 at 32–33.) He said that after submitting an I-60 inmate request about his high blood pressure the previous day, a nurse had come to check his blood pressure and found that it was "extremely high." He told the nurse that he had not taken his medication because it caused "a great deal" of burning in his chest and stomach, and that she had asked an officer to go find his medication in his cell. (*Id.* at 32.) When the officer was unable to find the medication, the nurse said that she was going to have his medication order changed so he would have to receive his medication at the pill window rather than having it kop. (*Id.* at 32–33.) Plaintiff cited his high blood pressure and blackouts and requested, among other relief, a bunk pass. (*Id.* at 33.) Staff returned the grievance to him on January 5, 2022, marked "No es apropiado"—inappropriate. (*Id.*)

Plaintiff submitted Step 1 grievance #2022049807 on January 9, 2022, and it was stamped received on January 10. (Dkt. #25-1 at 89–90.) He complained that he had high blood pressure and that medical staff had done nothing to treat it other than take away his kop privileges and keep him on a regular high-sodium diet. He said he had been to medical and been denied treatment. He asserted that he was having blackouts that were not being evaluated by medical and that he had fallen down twice. (*Id.* at 89.) The response to this grievance was returned to Plaintiff on February 15, 2022. It said that Plaintiff had been seen on January 7, 2022, by a provider who changed his

5

medication from kop to daily administration "based on clinical indications" and reported that Plaintiff acknowledged adjusting his own medications based on how he felt. (*Id.* at 90.) It advised Plaintiff to report to the pill window and the medical clinic at the appropriate times for medication and blood pressure checks. (*Id.*)

Plaintiff filed a Step 2 appeal of that response, which was received by officials on February 22, 2022. (*Id.* at 87–88.) He asserted that staff was misconstruing his statements "to justify the inability to manage [his] blood pressure issues" and that his blood pressure had been dangerously high most of the time since his arrival at the unit. (*Id.* at 87.) He said he had experienced blackouts and cognitive dysfunction and that the care he was receiving was ineffective. He sought a special medical diet and referral to a specialist. (*Id.*) The response to Plaintiff's appeal was dated March 14, 2022. (*Id.* at 88.) It explained that Plaintiff's cell had been searched on January 4, 2022, but his kop psych medications and other medications were not found, leading to the addition of a medical hoarding warning to his chart and removal of his kop privileges. (*Id.*) It also stated that Plaintiff had not been compliant with medications as prescribed, frequently did not show up to have his blood pressure checked, and had no documented need for the diet he requested. (*Id.*)

Plaintiff submitted Step 1 grievance #2022053134 on January 15, 2022. (Dkt. #25-1 at 30–31.) He complained that he had extremely high blood pressure, causing severe headaches, but that he was not being permitted to attend his scheduled sick calls. (*Id.* at 30.) He said his condition was causing blackouts and falls. (*Id.*) Plaintiff stated that he showed a nurse his injured arm after a fall on November 2, 2021, but no x-rays were taken until after he fell again the following day. (*Id.*) Plaintiff asserted that "I was told that I am old and that they didn't cause me harm, yet my arm hurts to this day." (*Id.* at 30–31.) This grievance was returned to Plaintiff on January 18, 2022 as "redundant" to grievance #2022049807. (*Id.* at 31.)

On January 21, 2022, Plaintiff submitted Step 1 grievance #2022055217 to complain generally that his high blood pressure was being mismanaged by the prison health staff. (Dkt. #25-1 at 28–29.) He asserted that his blood pressure remained high despite taking his prescribed medication (contrary to staff's belief that he was not taking it) and that staff were intentionally manipulating his blood pressure checks to falsely indicate that his blood pressure was lower than it actually was. (*Id.*) That grievance was returned to him on January 24, 2022, again as "redundant" to grievance #2022049807. (*Id.* at 29.)

In Step 1 grievance #202205948, dated January 4, 2022, but stamped received on February 4, 2022, Plaintiff complained again about the change from being able to have his blood pressure medication kop to having to obtain it daily from the pill window. (Dkt. #25-1 at 26–27.) He attributed the change to retaliation. (*Id.*) That grievance was returned to him on February 4, 2022, marked "redundant" to grievance #2022049807. (*Id.* at 27.)

On March 2, 2022, Plaintiff was one of two inmates who signed Step 1 grievance #2022070393, complaining about being unable to get their medication the day before. (Dkt. #25-1 at 24–25.) They sought to have "[t]he pm pill window nurse . . . held accountable . . . and not allowed to skip [them] anymore." (*Id.* at 25.) That grievance was returned on March 3, 2020, marked by staff as "inappropriate." (*Id.*)

Plaintiff submitted Step 1 grievance #2022072153 on March 7, 2022. (Dkt. #25-1 at 59–60.) He asserted that his blood pressure had not been checked for weeks and that five blister-packs of medication had been given to him but then confiscated. (*Id.* at 59.) He said that he had not been allowed to "travel" within the prison to his blood pressure checks. (*Id.*) He also said that medical staff had failed to respond to his I-60 request about why he was not getting semi-weekly blood pressure checks as ordered. (*Id.*) He sought effective management of his blood pressure, including

a referral to a specialist if the unit was not capable of managing it. (*Id.* at 60.) This grievance was returned to Plaintiff on April 18, 2022, with a response stating that Plaintiff had been a "no show" for a blood pressure check in March and that he needed to report to the clinic at the appropriate time for his checks. (*Id.*)

Plaintiff submitted Step 1 grievance #2022075572 on March 15, 2022. (Dkt. #25-1 at 50–51.) He complained of blood pressure issues requiring medication that had not been provided for the past two days. (*Id.* at 50.) He asked that medication be provided as prescribed or to be allowed kop medication. (*Id.* at 51.) The response to that grievance, signed on April 4, 2022, by Defendant Cain, said that there had been no scheduling changes that would have caused medication not to be provided and that Plaintiff should report to the pill window at the appropriate time to receive medication. It also observed that Plaintiff was approximately 75% compliant with his non-kop medications and that he should submit an I-60 for "any additional medical health needs." (*Id.* at 51.)

On April 17, 2022, Plaintiff submitted Step 1 grievance #2022087863, complaining that he went without his prescribed blood pressure medication on many days because staff "only run pill window when they want to." (Dkt. #25-1 at 15–16.) Specifically, he said there had been no pill window from March 14th through the 17th, and that he had "suffered with very high blood pressure for this entire time period." (*Id.*) Plaintiff identified Defendant Cain as the staff member with whom he had tried to resolve his issue before filing a grievance, but said Cain told him he could not help because the matter was under investigation. (*Id.*) This grievance was returned to Plaintiff April 18, 2022, as "redundant" to grievance #2022075572. (*Id.* at 16.)

In Step 1 grievance 2022121893, dated July 8, 2022, Plaintiff asserted that he had a medical condition and needed help, indicated that he was the victim of malpractice because "they don't

8

help me with any problems." (Dkt. #25-1 at 3.) He identified Ms. Helt as the staff member with whom he had tried to resolve his problem before filing a grievance but said that she would not let him speak. (*Id.*) And he said that he had already submitted the same grievance twice without response. (*Id.*) Staff response to the grievance indicated that it was returned to Plaintiff on July 11, 2022, as "redundant," citing grievance #2022107940. (*Id.* at 4.) The Court has been unable to locate grievance #2022107940 among the ninety pages of grievance records filed by Defendants.

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be "brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute expressly defines the term "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.*, § 1997e(h).

It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91; *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) ("This circuit has taken a 'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance

procedures, but instead must 'exhaust available remedies properly.'"). The Fifth Circuit has reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court has reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

The Supreme Court has expressly held that failure to exhaust is an affirmative defense on which Defendants must bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see Abbott v. Babin*, 587 Fed. App'x 116, 118 (5th Cir. 2014) ( "When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted"); *see also Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 508 (5th Cir. 2013) (same); *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (noting that prison officials "must establish beyond peradventure all of the essential elements of the defense of exhaustion").

Defendants in this case have not carried that burden. They cherry-pick two procedurally-rejected grievances to argue failure to exhaust, but they do not address the mountain of other grievances in which Plaintiff asserted his complaints about medical mismanagement of his high blood pressure, his falls, and his arm injury. Most notably, they do not address grievances #2022047956 or #2022049807, both of which Plaintiff fully exhausted in January and February of 2022, months before filing his original complaint in this case. (Dkt. #25-1 at 73–76, 87–90.) Those grievances raised the issues about which Plaintiff has brought suit: chronic failure to treat his high blood pressure, resulting in headaches, blackouts, and falls, as well as failure to treat an arm injury sustained in one of those falls. Contrary to Defendants' assertion, Plaintiff's arm injury and failure to treat it were raised in the course of exhausting one of those grievances—grievance #2022049807—and he raised it again in a subsequent grievance that was deemed redundant to that one.

Defendants presumably focus on the two unexhausted grievances they address because Plaintiff specifically named Defendants Cain and Helt in those grievances as the individuals with whom he spoke in an attempt to resolve his issues. But the PLRA does not require that a defendant be personally named in a prison grievance to satisfy the exhaustion requirement. *Jones*, 549 U.S. at 218. In other words, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. The PLRA requires exhaustion to give "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Here, Plaintiff's two exhausted grievances would have alerted authorities to his claim of a chronic failure to treat his medical needs, and investigation by those authorities would necessarily discover the potentially responsible parties.

Furthermore, Defendants seem to acknowledge that Plaintiff's grievance #2022121893, submitted after he filed suit, would exhaust his claim for failure to treat his medical needs if he had submitted it and properly complied with the TDCJ's requirements for exhaustion before filing his complaint. But the rejection of that grievance as redundant to a previous grievance—#2022107940—leaves room for the possibility that the same issue had been fully exhausted in the earlier grievance and that such exhaustion occurred prior to the filing of Plaintiff's complaint. Because Defendants have not filed or discussed that grievance, they have not established otherwise. Thus even if Defendants view Plaintiff's claim about failure to treat his blood pressure as limited to the specific examples he provides about the closed pill window in March and May, this record does not preclude the possibility that he exhausted a grievance about that narrow issue. And again, the Court's liberal construction of Plaintiff's *pro se* pleading is not that narrow.

The Defendants thus fail to demonstrate that they are entitled to judgment as a matter of law on the issue of exhaustion, and their motion should be denied.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (Dkt. #25) be **DENIED.**

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and

legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 14th day of February, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE