IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LUIS B. LOPEZ,<br><br>   **Plaintiff,**<br><br>v.<br><br>PRACTICE MANAGER MTC BRANT CAIN, PROVIDER MTC UNKNOWN HELT, NURSE MTC UNKNOWN LOWIS, OFFICE OF THE ATTORNEY GENERAL - AMICUS CURIAE,<br><br>   **Defendants.** | § § § § § § § § § § § § §    CIVIL ACTION NO.  6:22-CV-00148-JDK |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Luis Lopez, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. This case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the action. (Doc. No. 3.) Thereafter, Defendants Brant Cain and Elizabeth Helt ("Defendants") filed a motion for summary judgment (Doc. No. 44). For the reasons stated herein, the court **RECOMMENDS** that Defendants' motion for summary judgment (Doc. No. 44) be **GRANTED** as set forth herein.

  **I.**  **Background**

Plaintiff filed his original complaint in federal court on April 5, 2022, alleging that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Thereafter, Plaintiff twice amended his complaint and his live pleading before the court is his second amended complaint filed on May 24, 2022 (Doc. No. 11.) *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  In his

1

amended complaint, Plaintiff sues practice manager Brent Cain and provider Elizabeth Helt. (Doc. No. 11.) Plaintiff also purports to sue a Defendant Lowis, but no such person has been identified to date, and despite notice and opportunity to do so, Plaintiff has failed to identify or serve Defendant Lowis.[1] *See* Doc Nos. 48, 49.

### a. Plaintiff's Allegations

In his second amended complaint, Plaintiff alleges that he was suffering from high blood pressure, aches, pains, and blackouts, but he was repeatedly denied unspecified treatment and his prescribed blood pressure medication, conveying a general and long-standing failure to manage his blood pressure. (Doc. No. 11, at 4.)

Plaintiff identifies five days in March 2022 (March 4, 14, 15, 16, 17) and one day in May 2022 (May 6, 2022) on which the "pill window" did not open to distribute his medication. *Id.* at 6. Plaintiff alleges that he spoke to Defendant Cain on March 29, 2022, about not getting his medication or blood pressure checks daily, but that "no action was ever taken on this deliberate indifference" and that Defendants did not run the pill window on the dates identified above. *Id.* Plaintiff further alleges that he also spoke with Defendant Helt about an increase in blood pressure and headache that he believed was caused by a change in his psychiatric medication. *Id.* Plaintiff alleges that the psychiatrist changed his medications on April 26, 2022, but that Ms. Helt told him that she did not care what the doctor said. *Id.* Plaintiff states that he was having severe headaches and passing out at that time. *Id.*

Plaintiff further alleges that on November 1, 2021, he fell off of his bunk and hurt his arm and shoulder. *Id.* Plaintiff alleges that Defendant Helt told him that it was due to his old age that

---

[1] Defendants Cain and Helt were served through and are represented by the Texas Office of the Attorney General. (Doc. Nos. 12, 17.) Counsel for Defendants has advised the court that he took steps to locate Defendant Lowis but that no such person could be identified. (Doc. No. 25, at 1.)

2

he could not move his arm. *Id.* Plaintiff states that two days after the fall, he went to an outside hospital, where it was documented that he had had a stroke. *Id.*

Finally, Plaintiff alleges that he tried to talk to Ms. Lowis (or Lewis) once in February 2022 and again in May 2022 about "how [he] felt or what was bothering [him]," but "she would go crazy cussing [him]" and not let him speak. *Id.* Plaintiff seeks unspecified compensatory and punitive damages and an injunction to require treatment of medical issues. *Id.* at 4.

    b. **Summary Judgment Evidence**

On July 10, 2023, Defendants Cain and Helt filed the instant motion for summary judgment on Plaintiff's asserted claims (Doc. No. 44). Plaintiff did not file a response in opposition. In support of their motion for summary judgment, Defendants have submitted: (1) the affidavit of Glenda M. Adams, M.D., Ph.D. and corresponding exhibits, including Plaintiff's medical records (Doc. Nos. 46, 46-1, 46-2, 46-3); and (2) the affidavit of Jessica Riley and corresponding exhibits, including Plaintiff's grievance records (Doc. No. 44-1.) This evidence has been reviewed and will be discussed, as relevant, herein.

**II.**     **Legal Standard**

    a. **Motion for Summary Judgment**

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970);

*Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

### III. Discussion

#### a. Defendants Brant Cain's and Elizabeth Helt's Motion for Summary Judgment (Doc. No. 44)

Defendants argue, as an initial matter, that they are entitled to summary judgment because Plaintiff's claims for damages against Defendants in their official capacity are barred by the Eleventh Amendment. (Doc. No. 44, at 5.) Defendants further argue that any claim for deliberate indifference is refuted by the evidence that shows that Plaintiff consistently received care for his serious medical needs. *Id.* at 8. Specifically, as to Defendant Cain, Defendants argue that Defendant Cain did not violate Plaintiff's constitutional rights because Defendant Cain is not responsible for patient care, Plaintiff was responsible for his own failure to receive medication, and Plaintiff's claim that the pill window was closed is false. *Id.* at 10–16. As to Defendant Helt, Defendants argue that Defendant Helt did not violate Plaintiff's constitutional rights because she had no personal involvement in any alleged constitutional violation against Plaintiff, she did not show deliberate indifference when he fell because she was not the nurse who treated him that day, and she was not deliberately indifferent by refusing to prescribe Plaintiff psychological medication because doing so was beyond the scope of her authority. *Id.* at 15–18. Defendants further argue that any general claim for deliberate indifference is unfounded. *Id.* at 18–20. Lastly, Defendants

5

argue that they are entitled to qualified immunity. *Id.* at 20–22.

A response to Defendants' motion was due 30 days after the filing of the motion. (Doc. No. 12, at 3.) More than 30 days have passed since the filing of Defendants' motion for summary judgment, and Plaintiff has not filed a response or requested an extension of time to do so. Local Rule 7(d) provides that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." L.R. CV-7(d).

### i. Official Capacity Claims

Although Plaintiff's allegations do not make it clear that he is suing Defendants in their official capacities, Defendants first argue that any such claims against Defendants in their official capacities are barred by the Eleventh Amendment. (Doc. No. 44, at 5–8.)

At all relevant times alleged, Defendants were employed by the University of Texas Medical Branch at Galveston (UTMB). (Doc. No. 11.) The Eleventh Amendment of the United States Constitution grants sovereign immunity to states, therefore making states generally immune from suit in federal court. U.S. CONST. AMEND. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Moreover, a suit against a state official in their official capacity is barred by the Eleventh Amendment when it seeks monetary compensation for past injuries to be paid from a state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663–64 (1974). Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law and equity against a non-consenting state, or a state agency, by its own citizens. *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1220 (2008). Plaintiff does not dispute that UTMB is an arm of the state or that the State of Texas has not waived its immunity in this case. Thus, because Plaintiff's claims against Defendants in their official capacities are claims against the state,

Plaintiff's demand for relief in the form of monetary compensation for acts by Defendants in their official capacity are barred by the Eleventh Amendment.

As it pertains to Plaintiff's claim for injunctive relief, the *Ex parte Young* doctrine carves out a narrow exception to sovereign immunity for claims against state officials in their official capacity seeking injunctive relief. The Supreme Court has curtailed *Ex parte Young's* diminution of the Eleventh Amendment by limiting its availability to only extraordinary circumstances. According to the Supreme Court, extraordinary circumstances are those in which a suit is filed (1) against a state official, (2) seeking only prospective injunctive relief, (3) to end a "continuing violation of federal law." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996). Thus, "to avoid an Eleventh Amendment bar by means of *Ex parte Young*, 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344–45 (5th Cir. 2013) (alteration in original) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)).

Here, Plaintiff plainly does not allege prospective relief. Plaintiff's allegations relate to alleged lack of medical treatment while he was housed at the East Texas Treatment Facility (ETTF). Plaintiff's allegations involve specific past incidents where he fell from a bunk, sought medical treatment, and the pill counters were allegedly closed. (Doc. No. 1, at 6.) Plaintiff fails to allege sufficient facts to convey that any alleged constitutional violation is ongoing. Speculation of future injury based wholly upon past injury is insufficient to establish constitutional standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Moreover, to the extent Plaintiff's allegations regarding his uncontrolled blood pressure could be construed as ongoing, the record reflects that Plaintiff is no longer housed at the ETTF. (Doc. No. 46, at 3.) Thus, Plaintiff has failed

7

to establish a likelihood of substantial and immediate irreparable *future* injury.

For these reasons, the court recommends that to the extent that Plaintiff intended to assert claims against Defendants in their official capacities, those claims should be dismissed without prejudice.

### b. Individual Capacity Claims

Defendants next argue that the individual capacity claims should be dismissed because Plaintiff cannot establish deliberate indifference. (Doc. No. 44, at 8–18.)

#### i. Defendant Brant Cain

Defendants argue that Defendant Cain has no personal involvement in any constitutional violation because he is not responsible for pill window operations and the evidence shows that Plaintiff is responsible for his own failure to receive blood pressure treatment. (Doc. No. 44, at 10–16.)

To state a section 1983 claim, i.e., make out a violation of a constitutional right, against a defendant like Defendant Cain in his individual capacity, a plaintiff must allege that he was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"). As discussed above, Plaintiff has alleged that Defendant Cain was deliberately indifferent to his serious medical needs because he failed to take

8

action after Plaintiff spoke to him on March 29, 2022 about not getting his medication or blood pressure checks daily, and further contends that Defendant Cain contributed to the failure to run the pill window on the dates alleged. (Doc. No. 11, at 6.) These allegations can best be characterized as a claim for deliberate indifference.

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment.").

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, at 839–40 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* The official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

While Plaintiff has alleged that Defendant Cain did not take action after Plaintiff discussed that he was not receiving his blood pressure medication in March 2022, these allegations fail to state a claim for deliberate indifference. First, there are no allegations that Defendant Cain acted with the subjective recklessness necessary to establish a claim for deliberate indifference when he allegedly refused to provide Plaintiff with blood pressure medication. *See Farmer*, 511 U.S. at 838. Plaintiff does not allege, for example, that Defendant Cain knew that Plaintiff was at substantial risk of harm if he did not receive his blood pressure medication. As discussed, the allegations merely state that Plaintiff told Defendant Cain that he was not getting his medication. Moreover, the summary judgment evidence refutes this claim.

The record reflects that Defendant Cain was the practice manager during the time alleged. (Doc. No. 46, at 14.) The only medical record regarding a meeting between Defendant Cain and Plaintiff on March 29, 2022 is in an I-60 sick call request that indicated that Defendant Cain would "speak to [the] provider" about having Plaintiff's blood pressure medications restored to keep-on-person (KOP) status. (Doc. No. 46-3, at 7.) The I-60 included a response that informed Plaintiff that the medication is not KOP and he must go to the pill window. *Id.* As an initial matter, this evidence shows that indeed Defendant Cain was responsive to Plaintiff's request as his I-60 concedes that Defendant Cain said he would speak to the provider. The result of any such

10

communication appears to merely be one that Plaintiff was displeased with—that his blood pressure medication was not converted to KOP—but this does not amount to deliberate indifference. *See Gobert*, 463 F.3d at 346 ("[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances.").[2]

Moreover, Plaintiff makes no specific contentions regarding the appreciated risk or serious harm that would befall him should he be required to get his medications from the pill window. Even to the extent harm could be implied, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838; *Domino*, 239 F.3d at 756. As discussed, Plaintiff implies harm by his allegations that the pill window was closed on several dates in March 2022 and one day in May 2022. Plaintiff's allegations, however, do not state that Defendant Cain had any personal involvement in the alleged closing of the pill window, thereby failing to establish his involvement in any purported constitutional violation based upon those facts. *Jones*, 678 F.3d at 349.

Moreover, the undisputed record reflects that the pill window was indeed open on the days complained of. Plaintiff alleges that the pill widow was closed in 2022 on March 4, 14, 15, 16, 17, and May 6. (Doc. No. 11, at 6.) The summary judgment evidence demonstrates that the pillow window was open on these dates twice daily from 5:00 A.M. to 6:30 A.M. and from 5:00 P.M. to 7:00 P.M. (Doc. No. 46-3, at 42–47.) Further, ETTF policy reflects that the pill window remains open until all patients standing in line at the time of scheduled closing are provided their medications. *Id.*

---

[2] The undisputed record further reflects that Plaintiff's KOP status had previously been revoked on account of his medication hoarding and misuse. (Doc. No. 46, at 8.)

11

At best, Defendant Cain's complained-of conduct was negligent, which fails to establish a claim of deliberate indifference. *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017) ("negligence does not suffice to state a claim of deliberate indifference."). Given the undisputed facts discussed herein, Plaintiff has failed to create a genuine issue of material fact regarding a claim for deliberate indifference against Defendant Cain.

ii. **Defendant Elizabeth Helt**

Defendants argue that Defendant Helt did not have any personal involvement in any alleged constitutional violation against Plaintiff as she was not the nurse who treated him on the day he allegedly fell from his bunk, and it was beyond her authority to prescribe psychological medication to Plaintiff. (Doc. No. 44, at 16–18.)

As discussed above, to state a § 1983 claim against Defendant Helt, Plaintiff must show that she was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Jones*, 678 F.3d at 349 ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"). Plaintiff asserts two separate factual bases for deliberate indifference claims against Defendant Helt: (1) Plaintiff alleges that on May 3, 2022, he spoke with Defendant Helt about his psychological medications and his blood pressure headache and she stated that she did not care; and (2) Plaintiff alleges that on November 1, 2021 he fell from his bunk and hurt his arm and Defendant Helt told him he couldn't move his arm because he was old, but when Plaintiff went to an outside hospital two days later, it was deemed he had a stroke. (Doc. No. 11, at 6.)

As discussed above, deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment,

12

whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Harris*, 198 F.3d at 159; *Estelle*, 429 U.S. at 97. It is "an extremely high standard to meet." *Domino*, 239 F.3d at 756. Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick*, 105 F.3d at 1061. To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert*, 463 F.3d at 351. Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall*, 190 F.3d at 697 ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment.").

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 839–40. Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.*; *Reeves*, 27 F.3d 174. Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado*, 920 F.2d 320.

       **1. Claim Regarding Medications and Increased Blood Pressure**

Plaintiff alleges that on May 3, 2022, he spoke with Defendant Helt about his psych meds increasing his blood pressure and she stated that "she didn't care what the psych doctor said [sic] wasn't important." (Doc. No. 11, at 6.)

These allegations fail to establish that Defendant Helt was deliberately indifferent in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 839–40. Although these allegations are a bit difficult to understand, it appears that Plaintiff is alleging that Defendant Helt was deliberately indifferent with respect to ensuring that his medications were adjusted to prevent the fainting and headaches that he was experiencing. (Doc. No. 11, at 6.) Notably, Plaintiff once again does not allege that Defendant Helt was subjectively aware of a substantial risk of harm to Plaintiff, but instead merely states that he was experiencing headaches from his blood pressure medicine. *Id.* Even to the extent it can be inferred that Defendant Helt appreciated such a risk, the undisputed facts fail to create a genuine issue of material fact that Defendant Helt was deliberately indifferent to Plaintiff's serious medical needs.

Here, the clinical record reflects that, on the day complained of, May 3, 2022, Plaintiff met with Defendant Helt to discuss the results of his lipid panel. (Doc. No. 46-3, at 32–33.) Defendant Helt discussed Plaintiff's diet with him regarding a decreased fat intake and instructed him to follow up with his primary care physician to recheck lipids. *Id.* at 33. Thus, the undisputed facts show that this encounter did not involve treatment for Plaintiff's blood pressure or even a discussion regarding Plaintiff's alleged symptoms, and nothing about this encounter presents a factual basis for a claim for medical deliberate indifference.

### 2. Claim Regarding Fall from Bunk

With respect to Plaintiff's allegations against Defendant Helt regarding his fall, Plaintiff alleges that on November 1, 2021 he fell from his bunk and hurt his arm and that Defendant Helt

14

told him he couldn't move his arm because he was old, but when Plaintiff went to an outside hospital two days later, it was deemed that he had a stroke. (Doc. No. 11, at 6.) Again, the undisputed evidence from Plaintiff's medical records refutes any claim for deliberate indifference based up on these facts.

The record reflects that Plaintiff did not see Defendant Helt on November 1, 2021, and was instead seen on that date by other nursing staff for migraine and sinus congestion, for which he was provided acetaminophen and an antihistamine. (Doc. No. 46, at 46–54.) Further, while the records show that Plaintiff was seen at the UT Health Henderson Emergency Department by Dr. John Tracy on November 3, 2021 for chest pain and abdominal pain, contrary to Plaintiff's allegations, Plaintiff was not diagnosed as having had a stroke. (Doc. No. 46-1, at 2–12.) Rather, it was concluded that Plaintiff was suffering from mild diverticulitis and mild constipation. *Id.* at 11. With respect to Defendant Helt, Plaintiff saw Defendant Helt on November 17, 2021 for left shoulder pain. (Doc. No. 46-1, at 25.) Defendant Helt noted that there were no acute abnormalities with respect to Plaintiff's shoulder based upon clinical observation and ordered follow-up x-rays. *Id.* at 24–25. Again, these undisputed facts fail to demonstrate a claim for deliberate indifference against Defendant Helt. Even to the extent that it could be implied that Defendant Helt was negligent in her care of Plaintiff, which the record does not reflect, "allegations of malpractice or negligence will never state a claim under the Eighth Amendment." *Hall*, 190 F.3d at 697; *see also Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

Given the undisputed facts discussed herein, Plaintiff has failed to create a genuine issue of material fact regarding a claim for deliberate indifference against Defendant Helt.

iii. **Unknown Defendant Lowis**

Plaintiff's complaint also purports to state a claim against an unknown "Ms. Lewis" or "Lowis". (Doc. No. 11, at 6.) As discussed, despite providing Plaintiff an opportunity to identify and serve Defendant Lowis, Plaintiff has failed to identify or serve her. (Doc. No. 49.) Nonetheless, the court considers the allegations against her. The Fifth Circuit has held that parties not joining a motion are nonetheless entitled to benefit of that motion. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Unserved and defaulting officials are entitled to "benefit from the appearing defendant's favorable summary judgment motion." *Id.*

Here, Plaintiff's allegations against Defendant Lowis all relate to his deliberate indifference claim for failing to receive proper treatment at ETTF. (Doc. No. 11, at 6.) In this instance, Plaintiff alleges that Defendant Lowis would not properly discuss with Plaintiff how he was feeling. *Id.* As discussed above, these allegations do not amount to a constitutional violation and nothing about the facts alleged with respect to Defendant Lowis changes the court's analysis. As Plaintiff has already been given an opportunity to amend and has pleaded his "best case," any further amendment would be futile. *See Norman v. Tex. Court of Criminal Appeals*, 582 F. App'x 430, 431 (Mem) (5th Cir. 2014) (unpublished); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). As such, the claims against Defendant Lowis should be dismissed with prejudice for failure to state a claim.

### c. Qualified Immunity

Additionally, Defendants invoke the defense of qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It gives government officials breathing room to make

reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Thompson v. Mercer*, 762 F.3d 433. 436–37 (5th Cir. 2014) (citations omitted).

In determining whether a defendant is entitled to qualified immunity, the court evaluates (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights, and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident. *Stidham v. Texas Commission on Private Security*, 418 F.3d 486, 490 (5th Cir. 2005). These two prongs may be considered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Even if the government official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After a defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). To overcome a motion to dismiss based on qualified immunity, a plaintiff must allege facts showing a defendant violated the plaintiff's constitutional rights and the violation was objectively unreasonable. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams–Boldware v. Denton County, Texas*, 741 F.3d 635, 643–44 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-

movant (*i.e.* the plaintiff in this case) bears the burden of rebutting the defense." *See Est. of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…"). "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

Here, Plaintiff has failed to meet his burden of overcoming Defendants' invocation of qualified immunity. As discussed above, Plaintiff has failed to establish a constitutional violation by any Defendant. He therefore failed to clear the first hurdle. Plaintiff further has not shown that any of Defendants' conduct violated clearly established law or that Defendants' conduct was objectively unreasonable. *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (in the end, the question is whether the right is sufficiently clear that every reasonable official would have understood what he is doing violates such right); *Jones*, 132 F.3d at 1052 (even if the government official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable). Defendants are thus entitled to qualified immunity.

**IV. Conclusion**

For the reasons stated herein, the court **RECOMMENDS** that Defendants' motion for summary judgment (Doc. No. 44) be **GRANTED**. The claims against Defendants in their official capacities should be dismissed without prejudice and the claims against Defendants in their individual capacities should be dismissed with prejudice. The court **FURTHER RECOMMENDS** that the claims against Defendant Lowis be dismissed with prejudice for failure to state a claim.

Within fourteen days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 19th day of September, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE